## IN ADMIRALTY.—AUGUST, 1856.

## EDWARD MOLL AND GUSTAVUS REINERS, Assignees, &c., *vs.* BARK " GEORGE."

The court adopted the rule of the maritime law of Continental Europe, giving a material-man a lien on the ship, without any distinction between foreign and domestic ships. No lien, however, is implied where the material-man contracts with the owner in person.

A material-man having accepted the promissory note of the owner, in settlement of his account, and received a part payment of the note, he was held to have waived his lien on the ship, by giving a personal credit to the owner.

Decision of CHIEF JUSTICE LEE.

During the pendency of this cause, two claims of material-men have been interposed against the bark George. The first is the claim of Robert Brown, for blacksmith's work and materials, amounting to $894 05; the second is that of Charles A. Taner, sailmaker, for balance of account, amounting to $798.

It appears by the facts of the case, as admitted, that when the George was being fitted out at Honolulu, in the spring of 1855, for a whaling cruise to the North, Brown, at the request of the master of the George, Captain Wall, furnished materials for, and performed labor and services on the vessel, in his line of business, to the amount of his claim. It is also admitted that, at that time, the George hailed from a port in the United States, sailed under the American flag, and was furnished with a Sea Letter from the United States Consul at Honolulu, but that she was in fact the property of Swan & Clifford, by whom she had been purchased here some time previous, and who caused her to be conveyed to Mr. C. F. Hussey, an American citizen, because they being Hawaiian subjects could not own and sail a vessel in their own names, under the American flag.

The remedy of a material-man is three-fold, and lies against the master, the owners, and the ship. According to the general principles of maritime law, following in this respect the civil law, a material-man, who repairs or furnishes supplies to a ship, obtains thereby, without any express contract to that effect, a lien or specific claim on the ship for remuneration, which he may enforce directly against the ship by an action *in rem ;* and neither of these three remedies is displaced, except by conclusive proof that an exclusive credit was given either to the master or owner, or both, or to the ship itself. The Nestor, 1 Sumner's Rep., 73; bark Chusan, 2 Story's Rep., 455, 486; Andrews *vs.* Wall, 3 Howard's Rep., 568, 572; Conkling's U. S. Admiralty, 55, 56.

The maritime law of continental Europe makes no distinction between the cases of domestic ships and foreign ships, nor between supplies furnished in a home port and abroad, while the result of the modern decisions of the English courts appears to be, that with the exception of the common law lien in favor of a shipwright while he continues in possession of the ship which he has built or repaired, no lien or preference is given by the common or maritime law of England, for repairs made or supplies furnished in a home port, without

an express hypothecation.    Abbott on Shipping, part 2, Ch. 3, Sec. 9; 3 Kent's Com., 169; Conkling's U. S. Admiralty, 56.

In the United States, the general maritime law of continental Europe on this subject has been explicitly adopted, with the exception of the case of an American ship repaired or supplied in a port of the State to which she belongs; in which case, the local law of the State governs.    3 Kent's Com., 170; Conkling's U. S. Admiralty, 56; The Gen. Smith, 4 Wheaton's Reports, 438; The St. Iago de Cuba, 9 Wheaton's Rep., 409.

In this country, where we have no local law of lien, the question now arises for the first time, what rule of maritime lien we shall adopt.    Shall we, following the civil law, adopt the general marine law of continental Europe, which gives the material-man a lien on the ship itself for his security, which he may enforce *in rem*, without any distinction between the cases of domestic and foreign ships; or shall we adopt the more stringent rule of the English courts, which gives no lien for repairs or supplies furnished in a home port, except to the shipwright while he continues in possession of the vessel ?

I think, in the absence of any local law of lien, it would be wise to follow the civil law, and adopt the general rule of continental Europe, which appears to me to be more simple, definite and just, than that of England.

But though we adopt the rule in favor of the lien in cases of domestic as well as of foreign ships, still it must be with the qualification well known to the law, that no lien is ever implied when the material-man contracts with the owner in person.    It is only those contracts which the master enters into in his character of master, that specifically bind the ship, or affect it by way of lien or privilege in favor of the creditor.    When the owner is present, and acting in his own behalf as such, the contract is presumed to be made with him on his ordinary responsibility, without a view to the vessel as a fund from which compensation is to be derived.    The St. Iago de Cuba, 9 Wheaton's Rep., 409; Conkling's U. S. Admiralty, 59.

In this case, it appears that Brown dealt with the master of the ship, charged his labor and materials against the ship, asserted his lien, and has never waived or relinquished it, by taking the notes of Swan & Clifford in payment of his claim, or otherwise.    At the time of doing the work, it does not appear that Brown knew that the ship was the property of Swan & Clifford, or that he ever gave them any credit as the owners of the vessel, and I think his lien is a valid one, and should be allowed, that is to say, to the full amount of his claim, $798 29, and no more.    There has been no claim made for interest, and if one had been made, I should not have felt justified, under the peculiar circumstances of the case, in allowing it.

The second claim, that of Mr. Taner, sailmaker, for the balance of his account amounting to $798, stands upon a different footing, and cannot be allowed.    If his lien was originally a good one, he has waived it by giving a personal credit to Swan & Clifford.    He accepted their note in settlement of his account, and subsequently received fifty dollars on account of said note, which he endorsed thereon.    I do not mean to be understood as holding that the acceptance of a bill of exchange, for supplies or materials furnished a vessel, is a waiver of the right to resort to a suit *in rem* against the ship for satisfaction,

in case the bill is dishonored, nor even as holding that every acceptance of a negotiable promissory note works a waiver of the lien, when the note is not taken as an absolute payment.  But in this case, which is not so strong as would be that of a foreign ship putting in here for supplies when the owner is absent, I think the acceptance of the promissory note has worked a waiver and extinguishment of the lien, and accordingly the claim is denied, but without costs.

Mr. Griswold, proctor for Brown.

Mr. Ducorron, proctor for Taner.

Mr. Bates, proctor for the assignees of Swan & Clifford.